UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

**VINCENT L. LOCASCIO,**

   **Plaintiff,**

v.                Case No:  6:14-cv-1874-Orl-GJK

**COMMISSIONER OF SOCIAL SECURITY,**

   **Defendant.**

# MEMORANDUM OF DECISION

Vincent L. Locascio (the "Claimant") appeals from a final decision of the Commissioner of Social Security (the "Commissioner") denying his applications for Social Security Disability Insurance benefits ("DIB") and Supplemental Security Income ("SSI"). Doc. No. 1. Claimant alleges an onset of disability as of February 1, 2011, and Claimant is insured for DIB through June 30, 2016. R. 13, 51, 407. Claimant alleges disability primarily due to bipolar disorder, depression, migraines, obesity, pain, herniated discs in lumbar spine, and history of spinal fusion. R. 66, 79, 92, 96, 112, 128. Claimant argues that the Administrative Law Judge (the "ALJ") erred by: (1) by failing to mention or evaluate global assessment of functioning ("GAF") scores assigned by Claimant's treating psychiatrists; (2) giving great weight to the opinions of the non-examining physicians, but failing to adopt or further evaluate a portion of their opinions that Claimant is moderately limited in his ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number of rest periods; (3) mischaracterizing Dr. Colombo's opinion; and (4) failing to properly consider Claimant's lumbar impairments and migraines at step-two and in

determining Claimant's credibility. Doc. No. 17 at 13-24. For the reasons that follow, the Commissioner's final decision is **AFFIRMED**.

I. **THE ALJ'S FIVE-STEP DISABILITY EVALUATION PROCESS.**

Under the authority of the Social Security Act, the Social Security Administration has established a five-step sequential evaluation process for determining whether an individual is disabled. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). In *Doughty v. Apfel*, 245 F.3d 1274 (11th Cir. 2001), the Eleventh Circuit explained the five-step sequential evaluation process as follows:

> In order to receive disability benefits, the claimant must prove at step one that he is not undertaking substantial gainful activity. At step two, the claimant must prove that he is suffering from a severe impairment or combination of impairments. At step three, if the claimant proves that his impairment meets one of the listed impairments found in Appendix 1, he will be considered disabled without consideration of age, education, and work experience. If the claimant cannot prove the existence of a listed impairment, he must prove at step four that his impairment prevents him from performing his past relevant work. At the fifth step, the regulations direct the Commissioner to consider the claimant's residual functional capacity, age, education, and past work experience to determine whether the claimant can perform other work besides his past relevant work.

*Id*. at 1278 (citations omitted). The steps are followed in order. If it is determined that the claimant is not disabled at a step of the evaluation process, the evaluation will not go on to the next step.

II. **STANDARD OF REVIEW.**

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla — *i.e.*, the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing *Walden v. Schweiker*, 672 F.2d 835, 838 (11th

Cir. 1982) and *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). Where the Commissioner's decision is supported by substantial evidence, the District Court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). The District Court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560. The District Court "'may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner].'" *See Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004) (quoting *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

## III.   ANALYSIS.

### A. GAF Scores.

Claimant argues the ALJ erred by failing to specifically evaluate GAF scores of 40 and 41 from Claimant's treating psychiatrists, which Claimant maintains are not consistent with the ALJ's residual functional capacity assessment. Doc. No. 17 at 14-15 (citing *McCloud v. Barnhart*, 166 F. App'x 410, 418 (11th Cir. 2006) (unpublished)).[1] The Court finds Claimant's argument unavailing for two principle reasons. First, the case relied upon by Claimant is distinguishable. In *McCloud*, 166 F. App'x at 415, 418, the Eleventh Circuit essentially found that the ALJ made a material factual misrepresentation when the ALJ stated that the claimant had a GAF score of 45,

---

[1] A GAF score of 41-50 indicates serious symptoms, such as suicidal ideation or severe obsessional rituals, and/or a serious impairment in social, occupational, or school functioning. *See* American Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders* 34 (4th ed. 2000). GAF scores between 51 to 60 reflect moderate symptoms, such as flat affect or occasional panic attacks, and/or a moderate difficulty in social, occupational, or school settings. *Id.*

- 3 -

which reflects only moderate impairments. *Id.*[2] Based on that factual misstatement, the Eleventh Circuit was unable to determine whether the ALJ properly considered and weighed the claimant's GAF scores and, therefore, remanded the case for the ALJ to consider and weigh all of the claimant's GAF scores. *Id*. Here, there is no allegation that the ALJ made any factual misstatements related to Claimant's GAF scores. *See* Doc. No. 17 at 14-15. Instead, the issue raised by Claimant is whether the ALJ erred by failing to specifically evaluate the GAF scores.

Second, there is no rigid requirement that the ALJ state with particularity the weight given to GAF scores. *See generally Hurt v. Comm'r of Soc. Sec.*, 2013 WL 462005, at *4 (M.D. Fla. Feb. 7, 2013) (ALJ not required to comment on every GAF score). Courts in this district have also recognized that GAF scores are of "questionable value in determining an individual's mental functional capacity." *Wilson v. Astrue*, 653 F. Supp. 2d 1282, 1293 (M.D. Fla. 2009) (quoting *Gasaway v. Astrue*, Case No. 8:06-CV-1869-T-TGW, 2008 WL 585113, at *4 (M.D. Fla. Mar. 3, 2008)).[3] Given their questionable value, courts have generally declined to find reversible error where an ALJ does not expressly discuss a claimant's GAF scores. *See, e.g.*, *Bailey v. Astrue*, Case No. 3:09-cv-383-J-JRK, 2010 WL 3220302, at *8-9 (M.D. Fla. Aug. 13, 2010) (finding the ALJ's failure to mention Plaintiff's GAF scores did not require remand); *Smith v. Comm'r of Soc. Sec.*, Case No. 6:10-cv-1478-Orl-31KRS, 2011 WL 6217110, at *6-7 (M.D. Fla. Nov. 1, 2011) *report and recommendation adopted,* 2011 WL 6217124 (M.D. Fla. Dec. 14, 2011), *aff'd*, 486 F. App'x 874 (11th Cir. 2012) (stating "[b]ecause the ALJ indicated that he carefully reviewed the records before him, and there is no indication that he overlooked or misconstrued any GAF score,

---

[2] *See* supra n. 1 (GAF scores of 41-50 reflect serious impairments).

[3] The Court notes that the most recent edition of the Diagnostic and Statistical Manual of Mental Disorders does not utilize the GAF score scale, noting that it was recommended "the GAF be dropped . . . for several reasons, including its conceptual lack of clarity . . . and questionable psychometrics in routine practice." Am. Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders* 16 (5th ed. 2013).

I recommend that the Court find that the ALJ did not err by failing to include the GAF scores in his decision or by failing to state the weight he gave to each score."); *see also Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005) (there is no rigid requirement that an ALJ specifically refer to every piece of evidence in the record). Based on the forgoing, the Court rejects the Claimant's argument that the ALJ erred by failing to specifically evaluate the Claimant's GAF scores.

### B. Moderate Limitations In Completing Normal Workday and Workweek.

The ALJ gave significant weight to the Mental Residual Functional Capacity Evaluation opinion of a non-examining state agency physician, Dr. Barbara Lewis. R. 18, 101-102, 106-108. In the decision, the ALJ did not discuss the opinion of another non-examining physician, Dr. Butler (R. 11-20), but the Claimant maintains that Dr. Butler's opinion is consistent with Dr. Lewis's opinion. Doc. No. 17 at 16; R. 76 (Dr. Butler's opinion). The Claimant argues that the ALJ erred because a portion of their respective opinions allegedly contains a moderate limitation in the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods, but that limitation was not included in the ALJ's ultimate residual functional capacity assessment (R. 15). Doc. No. 17 at 15-17.[4] In short, Claimant

---

[4] In the decision, the ALJ determined that Claimant retains the residual functional capacity ("RFC") to:

> [P]erform light work . . . except the claimant is limited to lifting 20 pounds occasionally and 10 pounds frequently. The claimant is capable of standing and walking up to 2 hours in an 8-hour workday and sitting for up to 6 hours in an 8-hour workday. The claimant must avoid climbing ropes, ladders and scaffolds. The claimant is limited to occasional climbing, balancing, stooping, crouching and crawling. The claimant must avoid concentrated exposure to hazards such as heights and machinery. <u>Mental activities are limited to simple tasks and only occasional interaction with the public</u>.

R. 15 (emphasis added). Thus, with respect to mental limitations, the ALJ determined that Claimant is limited to simple tasks and only occasional interaction with the public.

argues the ALJ erred by giving significant weight to Dr. Lewis's Mental Residual Functional Capacity Evaluation, but then failed to adopt all of the limitations contained therein.  *Id*.

Claimant's argument is rejected because Dr. Lewis's finding, that the Claimant is moderately limited in his ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods, is not part of Dr. Lewis's ultimate mental residual functional capacity assessment (the "MRFC") and Dr. Lewis explained that the finding at issue did not preclude the sustained completion of simple work.  The finding at issue is contained in the first section of Dr. Lewis's MRFC (R. 106-07), which, as the Eleventh Circuit has stated, does not constitute the actual MRFC assessment, but only indicates that the Claimant's capacity is impaired.  *See Jones v. Comm'r of Soc. Sec.*, 478 F. App'x 610, 612 (11th Cir. 2012) (unpublished).[5]  Instead, Dr. Lewis's MRFC is contained in Dr. Lewis's final narrative, which explains how Claimant's impairments affect his functional limitations.  R. 108.  *See Land v. Comm'r of Soc. Sec.*, 494 F. App'x 47, 49 (11th Cir. 2012) (per curiam) (stating that checking the box in Section I of a mental RFC assessment form does not indicate the degree and extent of the limitation but rather is an aid before the doctor renders his or her actual RFC determination).

Dr. Lewis's MRFC provides:

> Claimant can understand, retain, and carry out simple instructions. Claimant can consistently and usefully perform routine tasks on a sustained basis with normal supervision, adapt over time to most changes and task demands, make simple decisions and take appropriate precautions for normal hazards.  [Claimant] has decreased ability to cooperate effectively with [the] public and co-workers in completing simple tasks and transactions and will function best on tasks with limited social demands.  <u>While the evidence indicates the claimant does suffer some degree of</u>

---

[5] In the Eleventh Circuit, unpublished decisions are not binding but are persuasive authority.  *See* 11th Cir. R. 36-2.

> limitation from mental health issues, the symptom severity noted
> would not preclude the completion of simple tasks.

R. 108 (emphasis added).  Therefore, despite moderate limitations (R. 107), Dr. Lewis opined that Claimant retains the ability to perform simple tasks with limited social interactions (R. 108), which is consistent with the ALJ's RFC that also limited Claimant to performing only simple tasks with occasional interaction with the public (R. 15).  *See supra* n.4.

Moreover, in Section I, immediately following the finding that Claimant is moderately limited in the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods, Dr. Lewis provides a narrative explaining:

> There are some deficits in sustained concentration and attention, however, the claimant is able to sustain sufficient concentration and attention for extended periods as required for the completion of simple, routine, repetitive tasks.

R. 107 (emphasis added).   Thus, even in the Section I findings, Dr. Lewis's narrative explained that despite moderate limitations, Claimant retained the ability to sustain sufficient concentration and attention for extended periods in order to complete simple, routine, and repetitive tasks.  R. 107.  Accordingly, Claimant's argument is rejected.

    **C.**   **Whether the ALJ Mischaracterized Dr. Colombo's Opinion.**

Dr. Carlos H. Colombo, M.D., is Claimant's treating orthopedist, who provided medical opinion evidence on August 20, 2012.  As a result of Claimant's lumbar disc herniations, cervical sprain/strain, cervicocranial syndrome, muscle spasms, and history of lumbar discectomy-fusion at L5-S1, Dr. Colombo opined as follows: Claimant has a 5% cervical and 8% lumbar impairment rating; Claimant should avoid repetitive neck flexion and extension, reaching or working overhead, as well as lifting over 25 pounds above the level of the shoulders; Claimant should avoid repetitive bending or prolonged bending, squatting, stooping, standing or sitting, as well as

lifting over 30 pounds floor to waist; Claimant is permanently restricted from doing any heavy lifting, bending and straining; and Claimant's prognosis is fair. R. 546-47. Thus, Dr. Colombo opined, in part, that Claimant should avoid prolonged standing or sitting. R. 546.

Claimant argues that the ALJ mischaracterized Dr. Colombo's opinion and committed reversible error because "the ALJ said that Dr. Colombo did not put any restrictions on standing." Doc. No. 17 at 14. In the section of the decision where the ALJ discusses the weight given to Dr. Colombo's opinion, the ALJ accurately describes Dr. Colombo's opinion. *See* R. 16 ("Dr. Colombo further advised the claimant to avoid . . . prolonged . . . standing, or sitting. . . ."). While the ALJ does later state that "Dr. Colombo did not assess walking or standing limitations, which would suggest that there were no clinical findings to warrant such restrictions," (R. 18) the Court finds that later statement, while inaccurate, does not amount to a material misrepresentation. This is so because the ALJ's residual functional capacity (the "RFC") finding specifically limits Claimant to standing and walking for no more than up to 2 hours in an 8-hour workday, which is consistent with Dr. Colombo's opinion of no prolonged standing. R. 15, 546. Accordingly, any error in the ALJ's latter misstatement of fact (R. 18) is harmless.

**D. Lumbar Impairments and Migraines.**

Claimant argues that the ALJ erred at step-two of the sequential evaluation process and in determining Claimant's credibility by failing to find Claimant's lumbar impairments and migraines severe impairments, and to consider them in determining Claimant's credibility. Doc. No. 17 at 21-24. As to the first part of Claimant's argument, that the ALJ erred by failing to find his lumbar impairments and migraines severe impairments at step-two, Courts have routinely rejected this argument. The Eleventh Circuit has "described step two as a 'filter' requiring the denial of any disability claim where no severe impairment or combination of impairments is present."

*Tuggerson-Brown v. Commissioner of Social Security*, 572 F. App'x 949, 950 (11th Cir. 2014) (unpublished and quoting *Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir. 1987)). "To proceed to step three of the evaluation process, an ALJ need only conclude that an applicant had 'at least one' severe impairment." *Tuggerson-Brown*, 572 F. App'x at 951 (quoting *Jamison*, 814 F.2d at 588). The Eleventh Circuit has stated that the "only consequence of the analysis at step two is that, if the ALJ finds no severe impairment or impairments, he should reach a conclusion of no disability [and not proceed to the next step]." *Tuggerson-Brown*, 572 F. App'x at 951. Thus, so long as the ALJ finds any impairment or combination of impairments severe at step-two, the ALJ may proceed to the remaining steps in the sequential evaluation process and there is no need for the ALJ to identify every severe impairment at step-two. *Id*. ("Based on our precedent and the regulations, therefore, it is apparent that there is no need for an ALJ to identify every severe impairment at step two."); see also *Farrington v. Astrue*, Case No. 3:09-cv-94-J-TEM, 2010 WL 1252684, at *4 (M.D. Fla. Mar. 29, 2010) (citing authority and explaining that finding a single impairment at step-two is all that is required so long as the ALJ considers all impairments, both severe and non-severe, throughout the sequential evaluation process, including in determining Claimant's RFC). Accordingly, Claimant's argument that the ALJ erred at step-two is rejected because the ALJ found several severe impairments and then proceeded to step-three. R. 13.

With respect to the ALJ's consideration of those impairments, which the ALJ did not find severe, in determining the Claimant's credibility, the Court also finds no error. In the decision, the ALJ acknowledges that "the [ALJ] must consider all of the claimant's impairments, including impairments that are not severe" when determining the Claimant RFC. R. 12. In making the RFC determining the ALJ states that the ALJ "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and

other evidence." R. 15.  The Eleventh Circuit has held that there "is no rigid requirement that the ALJ specifically refer to every piece of evidence . . . so long as the ALJ's decision . . . is not a broad rejection which is not enough to enable the district court . . . to conclude the ALJ considered [the claimant's] medical condition as a whole."  *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005) (internal quotations and citations omitted).

In addition, in the joint memorandum, Claimant points out that Dr. Colombo treated Claimant for his lumbar impairments and migraine headaches, in conjunction with a chiropractor. Doc. No. 17 at 21-23.  As discussed earlier, Dr. Colombo offered a medical opinion in this case, which limited the Claimant to: avoiding repetitive neck flexion and extension; reaching or working overhead; lifting over 25 pounds above the shoulders; lifting over 30 pounds from the floor to the waist; permanently avoiding any heavy lifting, bending, and straining; and avoiding any prolong standing, sitting, bending, squatting, or stooping.  R. 546-57.  Dr. Colombo's opinion is based upon his treatment and diagnoses of Claimant, which necessarily includes Claimant's lumbar impairments and migraines.  R. 546.  In the decision, the ALJ discusses Dr. Colombo's treatment and opinion, and specifically states that Dr. Colombo treated Claimant for "back pain and headaches."  R. 16.  The ALJ states that her RFC finding "is consistent with the restrictions set forth by Dr. Colombo."  R. 16.  The ALJ's RFC limits the Claimant to lifting no more than 20 pounds occasionally and ten pound frequently, standing and walking only up to 2 hours in an 8-hour workday, and only occasional balancing, climbing, stooping crouching, and crawling.  R. 15.  Thus, the Court agrees that the ALJ's RFC is "similar to and consistent with" (R. 16) Dr. Colombo's opinion, which was based, in part, upon Dr. Colombo's treatment of Claimant's lumbar impairments and migraines.  R. 546-47.  Accordingly, the Court rejects the Claimant's argument that the ALJ did not consider the Claimant's lumbar impairments and migraines.

IV.     CONCLUSION.

For the reasons stated above, it is hereby **ORDERED** that:

1. **The Commissioner's final decision is AFFIRMED**;

2. The Clerk is directed to enter judgment in favor of the Commissioner and against the Claimant, and to close the case.

**DONE and ORDERED** in Orlando, Florida on January 29, 2016.

*[signature]*
GREGORY J. KELLY
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Party
Courtroom Deputy